# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MICHAEL MONROE,

    *Plaintiff,*

vs.

CITY OF LAWRENCE, KANSAS

and

TARIK KHATIB,

    *Defendants.*

Case No. 13-2086-EFM-DJW

## MEMORANDUM AND ORDER

Plaintiff Michael Monroe brings suit against Defendant City of Lawrence, Kansas and Defendant Tarik Khatib, Chief of Police for the Lawrence Police Department. Plaintiff asserts three claims: (1) denial of his liberty interest without due process pursuant to 42 U.S.C. § 1983 against the City of Lawrence, (2) race discrimination under Title VII, 42 U.S.C. § 2000e et seq. against the City of Lawrence, and (3) race discrimination under 42 U.S.C. §§ 1981 and 1983 against the City of Lawrence and Chief Khatib. Defendants seek dismissal of Count I against the City of Lawrence and Count III against Chief Khatib. The Court largely denies the motion but grants it in small part.

# I. Factual and Procedural Background[1]

Plaintiff Michael Monroe is an African-American and resides in Lawrence, Kansas. Defendant City of Lawrence ("City") is a home-rule municipal corporation. Defendant Tarik Khatib ("Chief Khatib") is the Chief of Police for the Lawrence Police Department ("LPD").

Monroe was employed by the City in the LPD from 1991 until his ultimate termination on July 23, 2012. When Monroe began with the LPD, he was a patrol officer. In 2011, Monroe worked as a Sergeant in the Investigations Division, the position from which he was terminated.

*2010 Investigation*

In or about the spring of 2010, after the KU cash-for-tickets scandal was reported in the news, an LPD employee informed then Captain Khatib about an arrangement between a Caucasian LPD sergeant ("MS") and a member of the Kansas University Athletic Department ("RJ"). Captain Khatib and Captain Zarnowiec spoke with MS and asked whether MS received free athletic event tickets from RJ "in exchange for taking care of traffic tickets." MS admitted to Captain Khatib that he had taken care of a few traffic tickets for RJ and admitted that he had received tickets from RJ. MS, however, denied that he had received athletic tickets in exchange for taking care of the traffic tickets. Captains Khatib and Zarnowiec did not interview other

---

[1] These allegations are taken from the facts as set forth in Plaintiff's Second Amended Complaint (Doc. 53). The Court notes that Defendants' Motion to Dismiss (Doc. 23) is based on the allegations contained in Plaintiff's original Complaint. During the briefing of the Motion to Dismiss, Plaintiff requested leave to file an Amended Complaint, which the Court granted (Doc. 36). Defendants addressed these allegations in their reply brief to their original motion to dismiss. Plaintiff, however, requested leave again to file a Second Amended Complaint to add a few additional allegations—specifically as to Chief Khatib's "discretionary" actions. Defendants did not file a response to Plaintiff's motion, and the Court granted Plaintiff leave to file the Second Amended Complaint. (Doc. 51). The Court will consider the allegations as set forth in the Second Amended Complaint as it is the operative pleading in the case.

witnesses regarding the complaint, and the LPD closed its investigation into the matter. The LPD allegedly did not discipline MS as a result of this spring 2010 complaint and investigation.

On or about July 29, 2010, the City received an anonymous letter alleging that "quid pro quos" existed between RJ and LPD officers, and specifically mentioned MS as one of the officers. The LPD allegedly did not revisit the issue with MS after this letter.

### *2011-2012 Investigation and Monroe's Termination*

Sometime after Khatib became the Chief of Police in February 2011, the City again received an anonymous letter alleging that RJ received favors from officers of the LPD, specifically referencing MS. In May 2011, Chief Khatib contacted the LPD's Office of Professional Accountability regarding the anonymous letter. The LPD conducted an investigation based on this letter ("the 2011-12 investigation").

As part of the 2011-12 investigation, Captains Zarnowiec and Ward interviewed several civilians and LPD officers, including Monroe. Captains Zarnowiec and Ward interviewed Monroe on January 11 and 18, 2012, regarding the allegations in the second anonymous letter. During the interviews, Monroe stated that several years before the interviews (and before the investigation of the spring 2010 complaint), and at the request of MS, he dismissed two to three traffic tickets RJ had received. Monroe stated that he dismissed the tickets because RJ was a friend of MS. Monroe denied that he dismissed tickets in exchange for KU athletic event tickets. Monroe also stated during the interviews that he had received tickets to KU sporting events, but he paid for all of those tickets with the exception of tickets that he had received from a third party for one weekend at the Big 12 tournament. As a result of the 2011-12 investigation, the City offered MS the opportunity to resign his position with the LPD in lieu of termination. Monroe was not offered such a choice.

On or about February 6, 2012, Captain Mike Pattrick informed Monroe that he was being placed on administrative leave as a result of the 2011-12 investigation. On or about February 13, 2012, Chief Khatib met with Monroe and informed him that he would be demoted from Sergeant to officer assigned to the Patrol Division, effective February 26, 2012 as a result of the 2011-12 investigation. Chief Khatib provided Monroe with a letter, dated February 13, 2012, confirming his decision to demote Monroe.

On or about February 15, 2012, Chief Khatib received Monroe's written objection to the demotion decision. On February 21, 2012, Monroe was re-interviewed by Captains Zarnowiec and Ward as part of the ongoing 2011-12 investigation. On March 7, 2012, Chief Khatib met with Monroe and informed him that, instead of a demotion, Monroe's employment with the LPD would be terminated, effective March 22, 2012.

Chief Khatib also sent a letter to Monroe on March 7, 2012 and "invited" Monroe to attend a meeting on March 21 in which Monroe could "present information in support of the reasons why you should not be discharged as an employee of the City of Lawrence." A second March 7 letter provided that if Monroe was "dissatisfied with, or take exception to, any discipline imposed upon you," he could "exercise the rights afforded to you by the City grievance policy." Monroe contends that the language in these two letters demonstrates that Chief Khatib had already decided to terminate Monroe's employment effective March 22 without a pre-termination hearing by an impartial tribunal. On March 22, the LPD terminated Monroe's employment.

Monroe exercised his rights under the grievance process and appealed the dismissal. In steps 1 and 2, Chief Khatib upheld the decision to terminate Monroe. Step 3 of the grievance process required Monroe to appeal the termination to the Grievance Review Board ("Board").

The Board conducted the hearing from June 25 through June 29, 2012. On June 29, 2012, the Board issued the decision that it had decided to modify the discipline to demotion to the rank of police officer. The Board also stated it would "reinstate pay at the rate of top of range with applicable competencies and benefits" effective February 26, 2012.

Both Monroe and Chief Khatib appealed the Board's decision to the City Manager. On July 23, 2012, the City Manager reversed the Board and upheld Chief Khatib's decision to terminate Monroe. Pursuant to the grievance procedure, the City Manager's decision was "final and subject to no further appeal." Monroe was terminated for a second time on July 23, 2012.

### *Media Reports about the 2011-12 Investigation*

In February 2012, an LPD captain informed Monroe that his name had been leaked to the media as an officer involved in allegedly dismissing traffic tickets in exchange for KU athletic event tickets. On February 17, 2012, the Mayor of Lawrence made a public statement stating that an LPD police officer had fixed traffic tickets in exchange for receiving free KU athletic event tickets and another police officer had knowledge of the arrangement but did nothing to stop it. In March 2012, the Lawrence Journal-World ran several articles that concluded that Monroe was one of the officers involved in the ticket investigation due to Monroe's termination from the LPD. Since Monroe's termination, Captain Ward has made a statement to other LPD officers that the LPD no longer believes that MS and RJ had any arrangement whereby MS agreed to dismiss tickets in exchange for free athletic event tickets.

### *The Current Lawsuit*

Monroe filed suit on February 19, 2013. In Monroe's first claim, he asserts that the City of Lawrence denied him his established liberty interest without due process in violation of 42

U.S.C. § 1983.[2] He claims that the City made numerous false statements with respect to his termination from the LPD that injured his reputation or imposed a stigma that will prevent him from obtaining future employment in law enforcement. Monroe also alleges that the City denied his right to a pre-termination hearing before an impartial tribunal at a meaningful time and in a meaningful manner. Monroe next asserts a race discrimination claim under Title VII, 42 U.S.C. § 2000 et seq. against the City. Finally, Monroe's third claim involves a race discrimination claim pursuant to 42 U.S.C. §§ 1981 and 1983 against the City and Chief Khatib. He claims that Defendants terminated him because of his race and treated him differently from Caucasian employees who allegedly committed similar or more egregious activity.

Defendants move for the dismissal of Count I against the City and the dismissal of Count III against Chief Khatib.[3]

## II. Legal Standard

### A. Standard for Dismissal under Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[4] Upon such motion, the court must decide "whether the complaint contains 'enough

---

[2] Plaintiff states in his complaints that the City denied him his established property interest. In Plaintiff's briefing with respect to Defendants' motion to dismiss, however, he affirmatively states that he does not bring a claim for violation of due process on the basis of a protected property interest. Thus, the Court will not address this issue, and Plaintiff does not have a claim on this basis.

[3] Defendants also moved for dismissal of Count III on the basis that Plaintiff failed to state a claim because Plaintiff did not reference 42 U.S.C. § 1983 in his Complaint, and claims for violations of § 1981 against state actors must be brought pursuant to §1983. Plaintiff's Amended Complaint specifically alleges that he brings his claim pursuant to 42 U.S.C. § 1981 and requests the remedies under 42 U.S.C. § 1983. Thus, Defendants' argument on this point is moot.

[4] Fed. R. Civ. P. 12(b)(6).

facts to state a claim to relief that is plausible on its face.' "[5] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[6] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[7] Under 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[8] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[9] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[10]

### III. Analysis

#### A. Plaintiff's First Claim—Denial of Liberty Interest without Due Process under 42 U.S.C. § 1983

Plaintiff alleges in Count I a violation of 42 U.S.C. § 1983 for the denial of his liberty interest without due process against the City. Defendants first argue that Plaintiff fails to

---

[5] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 566 U.S. at 556).

[7] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[8] *Iqbal*, 556 U.S. at 678-79.

[9] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (Citation omitted)).

[10] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 566 U.S. at 570).

adequately plead that a liberty interest was infringed.[11] Defendants next contend that Plaintiff fails to adequately allege that he was denied due process. The Court will first address whether Plaintiff adequately alleges a deprivation of his liberty interest.

"The liberty interest that due process protects includes the individual's freedom to earn a living."[12] There are four elements in stating a claim for deprivation of a liberty interest under 42 U.S.C. § 1983. "[F]irst, the statements must impugn the employee's good name, reputation, honor, or integrity; second, the statements must be false; third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities; and fourth, the statements must be published."[13]

Defendants argue that Plaintiff fails to state a claim because he fails to point to any specific factually inaccurate statement made by Defendants prior to Monroe's termination. Although the court agrees that "a formulaic recitation of the elements of a cause of action will not do,"[14] Plaintiff sufficiently alleges that the City made false statements regarding his involvement in the LPD's ticket-fixing investigation prior to and in connection with his termination from the LPD. Plaintiff specifically alleges that he did not dismiss traffic tickets in exchange for athletic event tickets. In addition, he alleges that Defendant City issued false statements in February and March that Plaintiff was an employee involved in fixing tickets for RJ. City officials also made statements that an LPD officer involved in fixing tickets was no

---

[11] As noted above, Plaintiff affirmatively states in his response to Defendant's motion that he does not bring a claim for violation of due process on the basis of a protected property interest. Thus, the Court will not address this issue.

[12] *Lentsch v. Marshall*, 741 F.2d 301, 303 (10th Cir. 1984).

[13] *Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1255 (10th Cir. 2007).

[14] *Twombly*, 550 U.S. at 555.

longer employed with the LPD in March. Thus, the City's public statements that Monroe was involved in the ticket-fixing would allegedly be false and would be in connection to the termination of his employment.[15]

Defendants next contend that Plaintiff fails to adequately allege that he was denied due process. Instead, Defendants assert that Plaintiff's allegations demonstrate that he received constitutionally sufficient due process. "An essential principle of due process is that a deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."[16] In general, an individual is entitled to a pre-termination hearing before an impartial tribunal.[17] "In particular, a pretermination hearing requires: (1) oral or written notice to the employee of the charges against him; (2) an explanation of the employer's evidence and (3) an opportunity for the employee to present his side of the story."[18]

Plaintiff alleges that he was denied the right to a pre-termination hearing and a post-termination hearing before an impartial tribunal. Specifically, Plaintiff alleges that he was informed by letter that his employment would be terminated effective March 22 but that he could appear before Chief Khatib on March 21 to discuss his impending termination. It is not clear from the complaint whether Plaintiff actually received the opportunity to present his side of the story before his termination became effective. It also is not clear whether he was given the

---

[15] Defendants assert that many of the alleged statements regarding Monroe's termination were not made by Defendant City but rather made by third parties beyond Defendant City's control. Defendants, however, rely upon material not cited to specifically in the Complaint (although attached to the Complaint). Defendants ask the Court to go beyond the allegations to make the determination as to whether the City (or another source) made these false statements. Plaintiff specifically alleges in his complaint that the City made false statements. Because the Court is considering a motion to dismiss, the Court will not consider the material outside the Complaint.

[16] *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009) (quotation marks and citation omitted).

[17] *Montgomery v. City of Ardmore*, 365 F.3d 926, 935-36 (10th Cir. 2004).

[18] *Id.* at 936 (internal quotation marks and citations omitted).

opportunity to present his information to an impartial tribunal prior to the effective date of his termination.[19] Based only on the allegations in the complaint, the Court cannot affirmatively conclude that Plaintiff was given constitutionally sufficient due process. Thus, the Court concludes that Plaintiff adequately alleges a deprivation of his liberty interest without due process. Defendants' motion to dismiss on this basis is denied.

### B. Plaintiff's Third Claim—Race Discrimination in Violation of 42 U.S.C. §§ 1981, 1983[20]

Defendants assert that Plaintiff fails to state a claim against Chief Khatib. First, Defendants contend that to the extent Plaintiff asserts a claim against Chief Khatib in his official capacity, his claim is in reality a claim against the City and must fail against Chief Khatib as a matter of law. A suit against a government official in his official capacity "is essentially another way of pleading an action against the county or municipality they represent."[21] "When a plaintiff names both a municipality and a municipal officer in his official capacity as defendants in an action, the suit against the officer is redundant, confusing, and unnecessary and should be dismissed."[22] Thus, the Court dismisses Plaintiff's claim against Chief Khatib in his official capacity.

---

[19] Plaintiff alleges in his complaint two termination dates: March 22, 2012 and July 23, 2012. It is unclear as to which date Plaintiff was terminated. This distinction could be important as to whether Plaintiff was given pre-termination or post-termination due process requirements. *See Riggins*, 572 F.3d at 1110 n. 6. The allegations in this case appear to be similar to the facts in *Riggins*. The record, however, in *Riggins* was much more developed because the case proceeded to summary judgment.

[20] As noted above, Defendants also argued in their original motion to dismiss that Plaintiff failed to state a claim because Plaintiff did not reference 42 U.S.C. § 1983. Because Plaintiff amended his complaint to include a reference to § 1983, Defendants' argument on this point is moot.

[21] *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010).

[22] *Sims v. Unified Gov't of Wyandotte Cnty.*, 120 F. Supp. 2d 938, 944 (D. Kan. 2000).

Defendants next contend that Plaintiff's claim against Chief Khatib in his individual capacity fails because Chief Khatib is entitled to qualified immunity. Qualified immunity protects a government official when performing discretionary functions from civil liability as long as his conduct does not violate a clearly established constitutional or statutory right that a reasonable person would have known.[23] "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct."[24]

Defendants argue that they have already demonstrated that Plaintiff does not allege a constitutional violation. Yet, the constitutional violation at issue with respect to this claim is not Plaintiff's alleged liberty interest.[25] Instead, it is Plaintiff's right to be free from racial discrimination. Indeed, Plaintiff states in his response that Defendants terminated him because of his race in violation of clearly established non-discrimination laws. Thus, Plaintiff alleges a race-based equal protection claim.

"In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII."[26] "To make out a prima facie case of discrimination, [Plaintiff] must demonstrate (1) membership in a protected class, (2) adverse

---

[23] *Stewart v. Beach*, 701 F.3d 1322, 1329 (10th Cir. 2012) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[24] *Id.* at 1329-30 (quotation marks and citation omitted).

[25] The Court notes, however, that it previously determined that Plaintiff adequately alleged a deprivation of his protected liberty interest.

[26] *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) (quotation marks and citation omitted).

employment action, and (3) disparate treatment among similarly situated employees."[27] In this case, Plaintiff alleges that he is African-American and that Defendants terminated his employment. Specifically, Plaintiff alleges that Chief Khatib made the initial decision to terminate his employment. Plaintiff alleges that similarly situated Caucasian employees were treated differently for similar, or more egregious, behavior. Plaintiff also alleges that a similarly situated Caucasian employee was permitted to resign—rather than be terminated—in connection with the same investigation. Furthermore, Plaintiff contends that another similarly situated Caucasian employee allegedly was not disciplined. Thus, Plaintiff sufficiently alleges a claim for race discrimination under § 1981.

With respect to Defendant Khatib's qualified immunity defense, the constitutional right to be free from racial discrimination was clearly established at the time of Plaintiff's termination.[28] Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's claim against Defendant Khatib in his individual capacity on the basis of qualified immunity.

---

[27] *Id.* (quotation marks and citation omitted).

[28] *See, e.g., Dasgupta v. Harris*, 407 F. App'x 325, 331 (10th Cir. 2011) (stating that well before 2006, public officials had adequate notice that employment discrimination on the basis of race violates § 1981).

**IT IS ACCORDINGLY ORDERED** this 27th day of January, 2014, that Defendants' Motion to Dismiss Counts I and III of Plaintiff's Complaint (Doc. 23) is hereby **DENIED IN PART AND GRANTED IN PART**. It is granted only with respect to the claim against Defendant Khatib in his official capacity. It is denied in all other respects.

    **IT IS SO ORDERED**.

    ERIC F. MELGREN
    UNITED STATES DISTRICT JUDGE